Case number 18-1153-NL. First Student, Inc., A Division of First Group America, Petitioner v. National Labor Relations Board. Mr. Cannella for the petitioner, Mr. Casserly for the respondent, Mr. Sharma for the intervener. Good morning. So may it please the court, I come here today from Columbus, Ohio, to argue on behalf of First Student in this case. And I very much appreciate the opportunity to share with you, clarify for you, the reasons we submit that the court should grant our petition for review and set aside the NLRB's order in this case. The reasons that I'll go over today can probably be captured in the board's holding, which was to find that First Student became a perfectly clear successor of the Saginaw, Michigan school district when it was negotiating a transportation services contract with the school district. That it became a perfectly clear successor two months before that contract was done being negotiated. Let's suppose we agree with you that that was error for the sake of argument. The board also found that even if that was not the case, your client became a perfectly clear successor as of May 16th, the date that the school board voted to approve the contract. That's also the date that the contract itself, even though it was executed later, that's the date that the parties agreed was the effective date of the contract. So let's suppose we agree with your first proposition. What's wrong with the board finding that there was a perfectly clear successor status as of May 16th based on the statements made during the May 16th meeting? Thank you. Our position is that, and when we litigated the case, our position was that the statements made at the March 2 meeting insulated First Student from being deemed to be a perfectly clear successor. Because it put the employees on notice that there were going to be changes. Obviously the statements that the company was going to only recognize a union if, and it was a misstatement by the person who said it, 51% of the employees came over. That in that event they would negotiate a new contract, that various terms were negotiable. All of those things under board decisions and court decisions were sufficient to insulate the company, to put the employees on notice for 10 changes were about to occur. That would be one thing. What about the 16th? Why don't you address yourself to what was said the 16th? I'm sorry? Why don't you address yourself to what was said at the 16th? On the 16th? Definitely. So what was said on the 16th mirrored in almost all respects what was said at the March 2 meeting. There were statements there that the company would recognize a union if it took on a majority of the school district's employees and would negotiate a new contract with them. That statement was repeated again there. The only new information that came on was that the company would maintain wages. Otherwise the message was pretty consistent. The second thing I would say about that, in saying that, I think it's important to bear in mind that this was a school board meeting. This was not a meeting by first student with the employees. What was communicated was based in response to questions asked by members of the Board of Education. And that's significant because our position is that what you are asked publicly about a narrow set of circumstances should not be enough to trigger perfectly clear successor status. Because you're responding to questions from Board members. If I understand your position, I think I see four arguments you're making by relying on your opening brief on Spruce Up and its interpretation of Burns. And incidentally, although normally the board would get great deference with respect to interpretation of a statute, in this case we're really interpreting a Supreme Court case. And you don't get any particular deference, or the board doesn't get any particular deference over the court over what a Supreme Court case means. And a Supreme Court case uses the term all, plan to take in all the employees. I get you to argue you didn't ever say that. The government, in response, says you're obliged to be a perfectly clear successor if you intended to take most of the government employees. But I don't think that's what Burns said. Secondly, in Spruce Up interpreting Burns, you have to offer exactly the same conditions. And my understanding, your position is that you did not. You did not commit to the same hours. You didn't commit to the same route. And you certainly didn't commit to the same employment. You indicated that in the past, 80 to 90 percent of people would be taken on. But in this case, you took on 41 of 55, barely a majority. Finally, with respect to the March 2nd, I find that particularly troublesome. The board has squarely held that you had a bargaining obligation as of March 2nd, which means you had a bargaining obligation when you didn't have an employer and you didn't have employees. Correct. A bargaining obligation in the air. If you had reached an agreement with the union on March 2nd, you would have violated 8.82 because you wouldn't have known whether you had a majority or not. And there's ample Supreme Court law on that. Yes. So those are. And with respect to May 16th, if May 16th would be a crucial date. It's only the day before you get to give the application. Twelve hours. Twelve hours. And if the concern was just a legitimate concern, the board has that someone would be the employees would be dissuaded from getting another job or whatever it is. Or by being misled. It can't very well be misled in 24 and 12 hours. So that's actually right. I don't see that March that May 16th is any different than May 17th. Anyway, that's the way I see your case. Our view was that first student did everything you would want an employer to do in this situation. That it met with the employees. It articulated what is the legal standard for successorship. Again, not 100 percent right. But if we hire 51 percent of the employees, we will recognize your union and we will negotiate a contract. That's exactly what Byrne says. Do I get the impression what the board is doing is collapsing the standard for successorship? And perfectly clear success. I wholeheartedly agree with that. Well, the Supreme Court, though, didn't adopt Justice Rehnquist position. All right. And in Byrne's, the only question was whether or not the employer was obligated to the terms of the collective bargaining agreement that had been in existence. And the court held no. The court there was dealing with a situation where not all of the old employees were hired by the new. And it seems to me a reasonable interpretation of the opinion, given the following comments, is that the all has to be understood in the context in which the court was addressing the issue. But what I want to be clear about your position here in response to Judge Wilkins question about the board's alternative reasoning about what was said on, not so much what was said, but what was done on March 16th, May 16th. I want to be clear. You think that under board precedent or under Supreme Court precedent, that what your client said to the employees was enough to indicate that there was no reasonable ground to believe that, A, they would be hired, but B, that the terms would be the same. And is that because the employees' representatives said they didn't know exactly what the routes would be, so they didn't know the hours? Well, that's certainly part of it. And that goes back to the March 2 meeting. That wasn't necessarily – I don't think that was repeated at the March 16 meeting. I agree. I don't mean to confuse you. But your position, I thought, in response to Judge Wilkins was your defense is that what employers, your client said at the March 2 meeting was sufficient to put everyone on notice. Absolutely. That it wasn't clear what was going to happen here. Yeah. And I think if you run through the litany of things that in the past have sufficed – Well – And the Board moves the goalpost in this case. And remember that we litigated this before NEXIO was issued when they said now you need a clear statement that you are going to condition employment on new employment terms. Let me ask you here. The year before, a contract had actually been entered between the school district and your employer. And then the school district changed its mind. Yes. And now we're the following year. So if I'm an employee, the notion that the district and the – for a student, not going to reach some kind of agreement, you think it's enough just to say, well, we don't know exactly what the roots will be? I think you have to look at it all collectively. Well, tell me one, two, three, what you think was said on the second that is an adequate defense. Because certainly the Board's subsequent decisions indicate you need more than that. Absolutely. And so this is the difference between the S&F market and the Ridgewell test of do you provide information that portends employment under new terms? In other words, gives a sign. As opposed to do you clearly inform the employees that you're going to condition employment on new conditions? I would say that absolutely does suffice. No dispute that if you do that, you insulate yourself from perfectly clear successor status. What I would quibble with the Board over and say its decisions don't support is saying it has to be clear. All it has to do is portend employment under new terms. The employees have to know. In this case, imagine this. You're going in. We work for a public employer. Now we're going to have a private employer. Private employer. Doesn't that tell you something? Probably going to be different. It's a private employer. Just out of the box you know that. And then you hear that we're going to require you to all submit applications. And MEEC says you better make sure you complete those things 100% accurately. But the district basically had the same requirements. They had a physical and other qualifications. What I'm trying to understand here is the burden under the statute here at least is on the new employer coming in. It's not on the employee to figure out what's going to happen. Well, and I think so then you have to ask did First Student say enough to put them on notice? Again, what it did was go over burns. Even the fact of saying. No, but what did it say specifically? Well, for one thing did you not say. May, March 2nd. If you hired 51% of the employees, everything was conditional. Well, my point is you my point is you let the employees know that there was a possibility that you wouldn't even be a successor, let alone a perfectly clear successor because you might not have 51%. Now, the statement about 51% wasn't the number of employees to be hired. It was that as to whether the hired employees 51% were represented by the old union. Those are two different things here. Which sent the message that there is no guarantee. It depends on how we hire. And to your point about the school districts and First Student's hiring criteria being similar, we say that a lot. I'd liken it to you have a different teacher grading different papers. You have a different coach coaching different people. They come up with different responses. So who's to say that First Student's can apply those criteria in the same fashion as the school district? All I'm getting at is we need bus drivers as the school district. Yes. All right. They've entered into a previous contract with your client the year before to provide the bus drivers. The burden is on, as I understand the law, Supreme Court, this court, even other circuits, the burden is on the employer, the new employer, the new potential employer, to make it clear. I would respectfully disagree. All right. The presumption is that they are free to set initial terms and conditions of employment. No question about it. But the question is, what do they tell the old employees? Well, and I would submit that the introduction of this concept, that it has to be clear, is a morphing of the Spruce-Up test from when the Spruce-Up board said clear, it was in reference to in connection with being invited to accept employment. Now we jump back and say, you make any statement at all, which, you know, stifle employers from responding favorably to prospects for employment. But now, if you make any statement, the board says, and you're not clear, you're going to introduce new terms, you're a perfectly clear successor from that moment on. But that's why I keep asking you, what did your client say to the employees on March 2nd? It said, if we recognize the union, if you complete an application, if you pass our hiring criteria, and if we hire 51 percent of the employees, we will recognize your union, but we will not take their contract. They said, you have to pass our test, which is, they didn't indicate it was any different than the current test. They said, normally we hire 80 to 90 percent of the existing workforce. Yes. What else did they say? Nothing was perfectly clear, that's for certain. What else did they say? No, but what I'm trying to understand is, we have this jurisprudence out here, and it's true that the board could decide to do something else. But right now, we're dealing with this jurisprudence that this court has previously recognized. You mean an SF, an SNF? In other cases, machinists, et cetera. So that we have this now, and I want to understand, the new employer can come in and say, we're a private employer, we're going to do things differently, we'll let you know after we reach final agreement on the contract terms. Now, you're not suggesting your client said that, and I'm trying to understand what your client said specifically that put these employees on notice. I think we've gone through it. You even mentioned the routes, that we can't tell you what the routes are. And interestingly, the board says, well, that's not a big deal, because they're going to use the school district system. Well, then the answer to the question would have been, well, where they are now, because we're using the school district system. No, but here's the point. The children have to get to school, all right? They're not building new bridges and new roads. Here, we're talking about hiring some bus drivers. Yes. So the question is, you know, are we going to go one route or another? But there's no signal that the bus drivers' wages are going to change, the hourly rate. I mean, I don't see this area meaning that the new employer is in any way stuck, but it's that if you come in and you lull employees into thinking that everything's going to be basically the same. Well, there is, you know, also a disconnect between the boards dropping and the Nexio test, as I call it, the misled prong of SpruceUp. That's been eviscerated. Why isn't your biggest – your easiest position is you never planned to take all of the employees, which is the key factor in Burns. We never said it. You never planned it. You never said it. You never did it. You ended up with – you said often we end up with between 80 and 90 percent. That isn't all. Now, maybe dropping one off, maybe dropping two would be virtually all. But Fall River – excuse me, not Fall River – Burns says all, planned all. And SF San Francisco says, repeats it, planned all. So I don't understand how you can – how the board can conclude you are a perfectly clear successor based, as their oral – as their argument in the brief puts it, when you hire most of the employees. That is just contrary to the United States Supreme Court, isn't it? Seems to be. All right. Thank you. But we can quibble about whether it's contrary or not. But aren't there cases that I could count on two hands where the board has held perfectly clear successor status without the successor employer hiring all of the employees? The board – there is board precedent to that effect. There's a lot of board precedent to that, right? I don't think there's necessarily a lot of board precedent. It depends on how you define it, but I know that – I could count the cases on two hands, couldn't I? In the case they cited – the board cited those cases in its decision, that's for sure. But it's not new in this case, right? Well, the board may have taken that position, and indeed I think the Sixth Circuit did. But why isn't it clearly wrong? Because we're interpreting the Supreme Court, right? We're not interpreting the board, we're interpreting the Supreme Court. That's true, and I look at it as well as evidence whether or not it was perfectly clear to begin with. It's just kind of fundamental that if you don't, then was it ever perfectly clear? Do you make the argument in your brief that by requiring less than planning to take all of the employees, that you can't be a perfectly clear successor? We don't make that argument, no, Your Honor. What was that again? We don't make the argument that if we hire a majority, we're protected from being a – only a majority we're protected from being a perfectly clear successor. We don't argue that. You don't argue that if you plan to take less than all of the employees, you are not a perfectly clear successor? No, I think if it's not perfectly clear based upon the evidence that we're going to take all of them. And really I – I don't understand. What was your answer to Judge Wilkins? Just acknowledging that there is board precedent and that we're not arguing that only hiring a majority protects you from being a perfectly clear successor. We didn't advance that argument, but that's indeed what Burns said. You didn't advance the argument. I – I did not. You did not advance the argument. You threw away the winning argument. No, we challenged the decision under Burns that it conflicts with Burns. What is your answer? I don't understand your answer to Judge Wilkins. I read your brief as saying, look, this is inconsistent with Spruce-Up, and Spruce-Up specifically states Burns requires a plan to hire all employees. And San Francisco S.F., our case, says Burns requires a plan to hire all employees. No, we did not. We didn't argue that you could find we plan to hire all employees. Absolutely not. What was that? We did not argue that you could find on this record that we plan to hire all employees. No. Counsel, you misunderstood the question. The question that was asked, did you not argue that a failure to plan to hire all employees took – takes you out of a perfectly clear successor? Not that way. No, we did not. You didn't? Not in that way. So you – Well, I would say that our argument is that you could not find on the record that we plan to hire all of the employees because we put the employees on notice that there were going to be changes for them. I understand. Are you going around in circles? You're saying – you specifically stated that we didn't plan to hire all employees, right? We didn't know. Yes, that's it. So you didn't plan to hire – you did not plan to hire all employees. Sure. Yeah, we didn't know. Did you – do you make the argument that's significant? We did make the argument that, again, just looking at – we made the argument we did not mislead anyone that we were going to hire all the employees. Counsel Burns specifically states that the exception, perfectly clear exception, requires an employer planning to hire all employees under the same conditions. We did not make the argument that the board's case law holding that – Not the board. I'm talking about the Supreme Court of the United States. Right. Did you not – did you take the position that – which was reiterated in Spruce-Up and reiterated in San Francisco – that Burns states that a perfectly clear successor is a successor who plans to hire all – based upon Spruce-Up's interpretation of Burns? Yeah, that's what I thought. Yes, that's exactly what we did. I apologize for the disconnect. Why don't we hear from counsel for the board, and we'll give you some time in rebuttal. Good morning, and may it please the Court. I'm David Casserly representing the National Labor Relations Board. I'm going to start off with addressing a few of the points Judge Silberman raised. First of all, one of the points Judge Silberman raised was that, in his view, on March 2nd, we could not find perfectly clear successorship status because there were no employees yet, there was no contract. No employer. No employer, no employees, et cetera, just a prospective possibility. I want to make two points in relation to that. First of all, as we say in our brief in a case called Road and Rail, the board has made clear that there is no 8A2 violation if a perfectly clear successor, who the board has found to be a perfectly clear successor, negotiates with the union before actually hiring any employees. So that is an exception to 8A2. Suppose they negotiated on March 2nd, reached a new agreement, and a minority of the employees who were previously employed ended up as employees of First Student. I mean, Your Honor. What's the answer, counsel? The answer, under a strict reading of Road and Rail, would be that's not a violation. Are you familiar with Altman, the Supreme Court case? Yes, Your Honor. Isn't it perfectly clear that that would be a violation of 8A2? Well, Your Honor, the other part of that is that — Isn't it perfectly clear that would be a violation of 8A2? I mean, what 8A2 means, yes, is that if you negotiate with a minority union as the majority representative. But to be clear, when they made the negotiation at that point, it wasn't a minority union. They don't know because they're not yet an employer. Half of the employees could say, no, I don't want to work for a private company. I want to stick with the government. And in that case, if that has ever happened, which it hasn't under the Road and Rail doctrine, that has never happened, but if it did, then the board could perhaps look at it and say, okay, actually, that's a void collective bargaining agreement. It was only valid until you made your hiring. No, it would be a violation of 8A2. Under Altman, it would clearly be a violation of 8A2. Again, Your Honor, in Road and Rail. And the other point about this is that the board — Now, there's one other possibility. It seems to me reasonable to say if the employer had made statements along the lines of Byrne's statements prior to consummating a contract, if the employer had said, we're going to hire all the employees and we're going to keep the conditions the same. And then a week later, enter into the contract. Then I think at the week later point, you can interpret it as a perfectly clear successor. But I don't think you can do it at the week earlier. You can use the terms from a week earlier to interpret what happens a week later. But you can't take those terms a week earlier before there is an employer, before there are employees, and call and say there's a bargaining obligation. Because if there was a bargaining obligation and they bargained, they would be risking violating 8A2. Yes, Your Honor. And indeed, that is what the board did here. The board did not say that there was a failure to bargain. The board was worried about this March 2nd position. So they came up with March 16th. I mean, May 16th. No, Your Honor. That's not what I'm referring to right now. I mean, that is true that the board also came up with May 16th. But the board found here that the bargaining obligation that attached on March 2nd is solely a duty to refrain from changing the terms and conditions of employment. No, they said bargaining obligation. Well, but then they also. Bargaining obligation means you can sit down and bargain. There's no such thing as a bargaining obligation without the obligation to bargain. But, Your Honor, the board also found that the unlawful refusal to bargain started as of August 17th, when they had hired employees. I understand that, but they stated that there was an obligation to bargain March 2nd. And that is inconceivable. So, Your Honor, it's, again, what the bargaining obligation that the board imposed here is not a duty to immediately sit down and bargain, negotiate a new contract. It's a duty to refrain from unilateral changes until they negotiate with the union. And they can push that negotiation point later. That's making up new developments for 8A5.  I don't know any other circumstances where an employer and a union have a bargaining obligation and they're not allowed to bargain. Well, what about in a technical 8A5 situation, Your Honor? The employer has a duty to refrain from any unilateral changes. Of course. Of course that's true. But that would be true under the old agreement. The union was still the existing agreement. So the employer would have an obligation not to unilaterally make a change. But here you've got a new employer. And you don't have employees. You could end up with zero employees. Or you could end up with employees feeling obliged to join because, as you well know, there are a number of cases, board cases, where an employer and a union reach agreements in the future for a plant to be opened. And that's held to be a violation of 8A2 unless there's a showing of a majority status. All right, counsel, could I ask, is this a case of first impression in the sense that in no prior board decision that I'm aware of, has there been a negotiating period as distinct from some type of agreement before the perfectly clear doctrine applies? No, Your Honor. Indeed, we cited a couple cases in our brief. But those cases are distinguishable because there was some type of agreement. What I'm trying to understand is, and you heard me talking with Petitioner's counsel, even though the record speaks of this contractual agreement in 2011, the board, in its opinion, doesn't make anything of that. Yes, Your Honor. dealing with the 2012. And as of March 2, all we know is that first student is one among several potential private contractors who could provide the student transportation. No, Your Honor. At that point, as of March 2, first student had been selected by the school district as the contractor, but they had not worked out an agreement yet. So that's what I don't understand. They selected them. Yes, Your Honor. But there's no obligation on either party's side to do anything. Is there until the board gives its approval on May 16? Or until after that, perhaps. But, yes, Your Honor. That's true. But, again, that's similar to cases as in Al-Ataqan, where there's a non-binding letter of intent, the parties negotiate, and during that time there are statements made that later. But even if the letter of intent is non-binding, it is a writing, and it's been signed by both parties, right? There's a bid here that's been signed, and the school district has selected that bid as the one and said, we're not going to take these other bids. They haven't agreed on a contract yet. But, you know, that seems to be the closest analog available in the cases. And so it's reasonable for the board to look at the situations and say, okay, this is the most similar in our case law, and we didn't find it to be an impediment in my case. This law may be different, but my experience is that a request for proposals is put out, bidders respond, and then a selection is made. But that's just the beginning of working out, in many instances, the details of the contract. So we don't know where we are at that point. That's true, Your Honor. But similarly, in other cases, there have been, you know, they've been at various stages throughout those negotiations before there's a finalized contract. So what is the board's concern here? I mean, all the employees know that, well, a bidder has been selected, but there's no contract. I'm not sure exactly what was communicated to the employees, Your Honor, along that. I'm trying to read it sort of most favorably to the employer here. Just for purposes of what the board is concerned about. I think the board is concerned about, as this Court recognized in Machinists, that employees have a reliance interest on their future employment, and they're not going to start looking for other jobs with other school districts if they think they're still going to have a job the next time. That reliance interest has got to be based on March 2nd, not May 16th. But here. Isn't that correct, counsel? I guess that's two answers. No, that reliance interest comes into play on May 16th as well. Even though it's only a seven-hour difference? Yes, Your Honor. I mean, the board draws a bright line, and so the court approved that in Creative Vision Resources. Which court? The Fifth Circuit, Your Honor. And the board, again, there's a bright line, and that's because it's a balancing of interests at that point. It's true that the employee reliance interest will go, will be a little bit less strong if the time is less. But the employer's interest is also in refraining from, you know, the employer can just wait another day at that point. Here's what I think is the clearest weakness in the board's position. Burns is quite clear. And our SF, San Francisco, repeats it. That in order to be a perfectly clear successor, as opposed to a successor, you have to plan to take all, all of the employees. Those are the words in Burns and those are the words in our prior case in SF. And you turned it into, in your brief, the argument is it's perfectly clear if there's a plan to take most of the employees. Blending a perfectly clear successor into a successor. Yes, Your Honor. So this is a, this is a doctrine that the board developed based on this court in Machinists on in Note 35, saying that all does not mean all. It means all are substantially. You know that? That is a tricky business. Note 35 in Spotswood Robinson's opinion is not a view of him or the court. It's just a reference to the board. It's not criticizing the board, though. It's just that Spotswood Robinson was very, very careful. And that I think that was deceptive on your part. When I read your brief, I thought, oh, my gosh, there was a footnote indicating an approval of that. That is not a footnote approving it. It's just a Spotswood very careful to point out everything everybody in the world said. And that was one of the things he pointed out. That was not a footnote indicating the court's view. OK. Even accepting that, Your Honor, though, it's clear that that has been the board's view for over 40 years, ever since Burns has been that. Where, where, where, where, where is it? Where is it? Where is the board's view? Kate. Well, first of all, I don't I don't see how the board can change the Supreme Court's law. This is not one where we defer to the board's interpretation of the statute where we're reading a Supreme Court case. And we don't defer to the board with respect to the reading of a Supreme Court case. And we have ourselves in S&F San Francisco, isn't it? We specifically said all. So, Your Honor, I have two answers to that. First of all, this is not raised in this case at all. This is clear from the very beginning. Look, I have to tell you, the brief filed by the employer here is not the best in the whole world. But he does make the argument that this is inconsistent with spruce ups interpretation of fall of mixing up fall. Reverend Burns. And you know why he this is inconsistent with spruce ups interpretation of Burns. And the first factor of Burns is all the plan to take all the employees and no change in conditions. Your Honor, there's an argument that this is inconsistent with spruce up. Absolutely. But it's the second part of spruce up that they've made their argument about. It's about. No, no, no. It's a it's a it's an inconsistent. It's an argument inconsistent with spruce up. But but a point that spruce up relied on Burns. So there's no question that spruce up is relying on Burns. Your Honor. In my view, not any reference to disagreeing with the board's application of spruce up automatically means that they're raising an argument related to the specific. That specific language, which they did not raise in this case, they did not say this was. And there's never been an issue, an argument here that telling employees we're going to hire 80 to 90 percent of you means that you're not a perfectly clear successor. That has not been argued in that case. It has been accepted throughout that that would mean they're perfectly clear successor. If they clearly told employees we're going to hire 89, 80 to 90 percent. I don't think they've ever conceded that. Well, I think they could argue the contrary to that, Your Honor. Regardless, we don't. Maybe they saw that way because your argument is most is qualifies. You presented clearly a legal argument here. Most qualifies as as a perfectly clear successor. It's yet. I mean, we have that statement in our brief, Your Honor, but we don't. It's a heading for your argument. Yes, but it's not. We don't focus on that. That's not one of the focuses of this case. We haven't cited all the 40 years again of board precedent on that issue. 40 years. Yes, Your Honor. The you know, you're facing a court case in this court which specifically says all. Yes, Your Honor. And that's the second part of the answer is in SNF markets. The issue wasn't the number of employees who were distributed to whom were distributed employment applications. In that case, the employer distributed them to everybody. So that wasn't it. That wasn't a bone of contention between the court and the board. The two bones of contention were on what was said. That's a fair point. But there was a description of what the law was in that case. It was a quote from Burns. Yes, Your Honor. And the board is quoted Burns again. And usually when it quotes Burns, it says all and keeps that in there. And then later includes that statement that was quoted in this in the footnote that this court has, I guess, cited in machinists. Then state puts that the board and courts have interpreted this to mean all. I just want to emphasize we cited without any approval. Cited without approval. OK, Your Honor. So let me understand. The board in this case says at the March 2nd meeting, the respondent stated that it would offer employment to all existing employees who completed applications and met its hiring criteria, which the record establishes are consistent with the school district's hiring criteria and industry-wide standards. Yes, Your Honor. The respondent underscored this intent by informing the employees that it typically hired 80 to 90 percent of an existing workforce. The respondent also stated, and here's where I was wrong, that it planned to recognize the employees' existing union representative so long as 51 percent of the existing workforce was hired by the respondent. Yes, Your Honor. So that is my understanding of what the board thinks Burns requires, that the new employer comes in and says, we're going to offer everybody a job. The conditions are the same. Qualifications are the same. And our history is, you know, we have hired 80 to 90 percent. And furthermore, we've also said that if we hire more than 51, the union comes with it. Yes, Your Honor. So I'm trying to, only thing I'm trying to understand is all of this happens March 2nd. And the closest cases are the two that you cited in your brief. And Judge Wilkins pointed out the difference in one. Here it's almost as though you have two strangers other than one is a bidder and that bid is selected. And at that point, the board says this Burns obligation can kick in. Well, Your Honor, the focus is on employees' reliance interest. And at the beginning of this meeting, this was first student's representative was introduced to them as the bid that had been selected to take over the school district's busing contract over the next year, to take that contract. And so it's reasonable for an employee from the employee's perspective at that meeting to look at that and say, okay, these people are going to become our employers. We should rely on the statements that they're saying here. Otherwise, why would there be such a meeting in the first place to have them meet with them if it's really at too early of a juncture for there to be any reliance? It seems that there wouldn't be that kind of meeting at that point, at least from an employee's perspective. If your employer is introducing somebody and saying this person, you know, to have come take over the company soon, that is the point that will start to engender employee reliance. So what's your – just to switch gears for a minute. The board seemed to rule that once perfectly clear successor status takes hold, it can't be vitiated, as opposed to there could be circumstances where it could be vitiated, which seems to be what we said at Machinist. If we find that the board used the wrong legal standard there, don't we have to remand? Well, Your Honor, I guess there's two issues there. There's whether it can possibly be vitiated, right, and whether it was sufficient in this case. I think my reading of First Student's argument here is that their subsequent announcement was fine because a subsequent announcement is always fine because they didn't have a contract yet. It wasn't a circumstances-based argument based on this court's sentence in Machinist. It wasn't a circumstances-based argument saying, well, even though the normal rule is that once employees have relied on that offer of employment or that expression of interest to hire, there cannot be any new terms announced after that point. It wasn't in these circumstances there should be an exception to that general rule. The board wasn't really presented with that argument, and so the board didn't have an opportunity to look at it. So I don't think the right answer would be a remand there. It would maybe be observing that that's not something that's brought up, that they haven't asked for that exception here. Your Honor. All right. Anything further? No, Your Honor. Thank you. Thank you. Counsel for the intervener? Thank you. Manish Sharma for the intervener. I just wanted to make a few quick points and follow up to what Judge Rogers was saying about what the board found in relation to March 2nd. On March 2nd, Doug Meek, the first student's general area manager, testified that he made the following statements, that the company wanted to hire as many individuals as possible, that typically in a conversion they hire 80 to 90 percent of the existing workforce, and that representative employees bring their representation with them. The company would bargain a new contract. He also explained how the application process worked. He specifically explained how the form works in extracting employees and how to fill those out. And then when asked about specific terms and conditions, such as vacation pay, pay time off, and sick pay, Meek said that those would all be subject to bargaining. Well, what about that statement? That they're subject to bargaining? Yes. So that's not a statement that portends that the employer will unilaterally implement initial terms and conditions. It indicates that the employer will bargain for those. And a perfectly clear successor forgoes the unilateral right to set the initial terms and conditions. The obligation is simply to bargain over those initial terms and conditions. And that's what the employer expressed in this case. Also expressed an intent to hire, as I said, they wanted to hire as many individuals as possible. That's not all, is it? But their intent was to hire as many as possible. But Burns says a plan to hire all. Well, I would submit that that is a plan to hire all. No, it is. It's a plan as many as possible. The ones who will pass all the tests, which, of course, may well be administered more strictly than the government does. Yes, well, there is a reason why the government is switching to a private company. It's true, Your Honor. But there's nothing in what was expressed in May 2nd that would indicate that the company wasn't intending to invite all employees. Everybody they could. Everybody who qualified. Sure. If 80 percent would qualify and 20 percent wouldn't, then Burns doesn't apply, does it? Well, that's not necessarily what they're saying, though. They weren't saying that we will only intend to take 80 to 90 percent. They said that's their normal practice. And that that may be 80, 90 percent. But they never said they would take all or even virtually all. Well, the board found that they intended to. No, they didn't. They never found that. I believe Judge Rogers. The board never found a determination they intended to take all. Anyway, the board's opinion speaks for itself. Right. And I would submit that what was expressed to the employees, at least as far as employees are from their perspective, would be told that they intended to take all. That doesn't mean that everyone would accept that employment, but they certainly intended to extend the employment to everyone. Do you agree from your research that the fact situation here in terms of applying the Burns doctrine presents a question of first impression for the board? Only in the sense, perhaps, of timeline, as far as the length of time, potentially. But I do believe the board has found cases in which expressions have been made prior to there being even a written instrument, at least indicated on the record in those cases, but perhaps not quite as long as the timeline here. Even if the timeline weren't as long, the point that Judge Wilkins was making earlier, and my question about just because you say a bidder is selected, is that enough of a commitment at that point? Under the facts of this case, at least, I would suggest that that is close to analogous to a situation in which two companies that entered into a non-binding letter of intent or an options agreement, as found in the Fremont Ford case, that they've progressed far enough that the intent was certainly to consummate that successorship. And just one quick point I wanted to make is that, to Judge Wilkins' point on whether it could be vitiated later, that expectations and reliance injuries are created by the initial statement. That goes to Spusup's point on whether or not the majority status of the union will continue, that employees rely on the statements that are initially made. And then it opens this question of majority status in the sense that they may not accept employment if unilateral terms are announced initially. But when they aren't, when only an expression is made to retain the majority of employees, and later a statement of unilateral implementation of new terms is announced, the employees react as they did here, which is in relation to what the employer would say here. First, they demand a bargain. They sent a bargaining demand just after the new terms were announced. When the company refused the bargain, then they filed a board charge. So instead of opening the question of majority status from the employee's perspective, they saw that as, one, a fee that would be remedied through the collective bargaining process, as the company claimed it would be, or, two, that it's an unfair labor practice. So the majority status is never in question, as Spusup requires. Thank you. Thank you. All right. Counsel for Petitioner. Thank you. Judge Rikers, I bet you have a question for me. Case of first impression? All right. I would say that if the question is, the board's holding that a bargaining obligation attached on March 2, then that makes this a case of first impression. We have argued that the other cases that the board and union referenced, and the board cited where there was reference to comments being made before there was a contract, we've taken the position the board actually relied upon what happened after the contract was executed. That was used as evidence to support the finding. And in none of those cases is there any language that a bargaining obligation attached. It's just not there. So I would say that. I wanted to comment on the May 16 meeting and the notion that with only five employees there, that that was sufficient in and of itself to trigger. Perfectly clear successor status, Mr. Cassidy mentioned creative visions. In creative visions, the board actually said the employers telling 20 of 70 employees that terms and conditions were going to change wasn't enough to put the entire unit on notice. So the fact that five employees heard comments that didn't reflect that things weren't going to change that only addressed the question about union representation and wages 12 hours before a meeting ought not to be sufficient. And certainly there would be no reliance interest associated with that. Now the reliance interest issue of March 2, again, our position is that, and certainly if you compare it with S&F Market Street, that you can say the cases are on all fours in terms of the analysis. But the importance in terms of reliance there, this is a period of time where a contract is being negotiated. And that's when the employer's interest ought to be greatest, too, in terms of negotiating the best deal that's going to make this worth it, not just necessarily for first student, but for any employer. And so I think that's an important consideration in terms of whether once that agreement is finally done, 12 hours later you're assuring the new terms. Could anybody rely upon that? Or should the employer's interest be given equal or more weight than that? You know, March 2, there is some missing evidence because, again, this case was not tried under the current standard. And the ALJ didn't necessarily be credited Meek's testimony, but one thing Meek said that he didn't find necessary to say was that Dr. Petras from the school board, who was at the March 2 meeting, told the employees not only that their contract would be null and void if first student was selected, but that they would work under first student's work rules. Now, can that be attributed to first student? I would submit that it can be, especially if you're reading Nexio and the tortured agency analysis in that case. I think if Meek and Kinsley are in the room with Dr. Petras and she says that and they don't say anything, they're agreeing with that statement. Those employees at that point have no basis to rely upon the belief that there is nothing that is going to change. But no finding by the ALJ. Pardon? But you acknowledge no finding by the ALJ. Yeah, he didn't mention that in the decision, but the evidence is unrebutted. But the question is whether the board's findings are supported by sufficient evidence in the record. I'm sorry, I didn't. I said, but the question here before this court is only are the board's findings supported by sufficient evidence in the record, not that there may be some evidence floating around. Okay, fair enough. The last thing I want to say is there was discussion about being selected as of the March 2 meeting. Look back at Meek's testimony. It was that if we get a contract. It was all conditioned on that, just like if you complete the application, if you pass the hiring checks that we have, which was also referenced in SNF Market Street as portending new employment terms. Why shouldn't we look at this as the same as an employer making statements after it has signed a nonbinding purchase agreement? Look at it as the same as? Yeah. Why isn't this the same as those cases where there's been a nonbinding purchase agreement that's been signed? Here there's a bid that's been submitted that's been accepted, but there's not a contract yet. Why isn't this the same? Yeah, I don't even know if I know what a nonbinding purchase agreement is. To me, it's not an agreement. And so if you're referring to Adichem. I mean, companies all the time enter into agreements in stages. Yeah, I don't think it's any different. Viewed that way, I don't think it's any different, you can't become a perfectly clear successor based upon a nonbinding agreement. I'm sorry, I didn't understand what you just said. That you can't become a perfectly clear successor if you've got discussions back and forth that aren't binding. It could be the same thing as we're in negotiations with the school district, but we don't know whether we're going to have an agreement. If it's nonbinding, who knows what the conditions are? I think you'd have to even know what they are. So you don't believe that the board has held that, or you're just saying that if the board has held that, then those decisions are wrong? I don't think the board has held that a nonbinding purchase agreement. I mean, again, you could quibble with Al-Badichem because it was characterized that way at points, but as we argue in our reply brief, everybody treated that, and there was no evidence there was ever any other agreement that led to the consummation of the sale. All right, thank you. Thank you. Any other case under advisement?
judges: Rogers, Wilkins, Silberman